IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JAMES DEWEES,** : | **CIVIL NO. 1:CV-03-0490** |
| **Plaintiff** : | |
| : | |
| v. : | |
| : | |
| **WARDEN DOMINICK DEROSE** : | |
| **and DAUPHIN COUNTY,** : | |
| : | |
| **Defendants** : | |

## **MEMORANDUM**

Before the court is Plaintiff's motion for a new trial. (Doc. 94.) A jury trial was held in the captioned matter on November 8, 9, 10, 12, 15, and 16, 2004, which resulted in a verdict in favor of Defendant Dominick DeRose ("Warden DeRose").[1] Plaintiff now raises several issues of alleged error that he contends warrant a new trial, including erroneous evidentiary rulings, trial misconduct, and misleading jury instructions. The court finds Plaintiff's arguments to be ill-founded; therefore, the court will deny Plaintiff's motion.

**I.     Background**

The factual and procedural background of the captioned matter is well-known to the parties and will not be reiterated in detail. The relevant background to the instant motion is as follows. Plaintiff, one of three deputy wardens at the Dauphin County Prison in Harrisburg, Pennsylvania, brought suit against Defendants under 42 U.S.C. § 1983 alleging retaliation for the exercise of his First Amendment rights.

---

[1]The other defendant, Dauphin County, was dismissed from the case on summary judgment.

Plaintiff alleged that he spoke out about the following matters of public concern: (1) inmate abuse, (2) Deputy Warden Carroll taking magazines that belonged to prisoners, (3) the acceptance of gifts and other emoluments from vendors by Prison officials, (4) Warden DeRose and other Prison administrators playing golf during work hours, and (5) being ordered to run a background check on a former employee. Plaintiff asserted that he made these complaints to both Warden DeRose and the County Commissioner, Anthony Petrucci. Plaintiff also alleged the following acts of retaliation: (1) Warden DeRose threatened Plaintiff in a "screaming tirade" in his office, (2) Warden DeRose reduced the Records Office staff and deprived Plaintiff of the resources needed to perform his job, (3) Warden DeRose frequently called Plaintiff into work unnecessarily, and (4) Warden DeRose recommenced a pay increase that was less than the other two deputy wardens and gave Plaintiff a "satisfactory" rating on his evaluation while the other two deputy wardens received an "exceeds expectations" rating.

Defendants filed a motion for summary judgment, and on August 17, 2004, the court granted the motion in part and denied it in part. In making this decision, the court did not consider the complaints Plaintiff allegedly made to Commissioner Petrucci because Plaintiff failed to establish a genuine issue that Warden DeRose ever learned about the information Plaintiff provided to Commissioner Petrucci. Nevertheless, the court granted Defendants' motion with respect to Defendant Dauphin County as well as with respect to Plaintiff's claim that he complained to Warden DeRose about Prison administrators playing golf during work hours and with respect to Plaintiff's claims that Warden DeRose retaliated against him by yelling at him, reducing his staff, and calling him into work frequently.

The court denied Defendants' motion in all other respects, and the case proceeded to trial on the following issues: (1) whether Plaintiff complained to Warden DeRose about Prison administrators accepting gifts and other emoluments from vendors, (2) whether Warden DeRose's decision to recommend less of a pay increase for Plaintiff than for the other deputy wardens in December 2002 was causally connected to Plaintiff's complaints about inmate abuse, Warden Carroll taking magazines that belonged to prisoners, being ordered to perform a background check on a former employee, and possibly Prison administrators accepting gifts from vendors, and (3) whether Warden DeRose would have reached the same decision regarding Plaintiff's December 2002 evaluation and corresponding pay increase even in the absence of the protected conduct. Plaintiff did not file a motion for reconsideration of the court's decision.

On September 17, 2004, Warden DeRose filed a motion *in limine* to preclude Plaintiff from introducing, among other things, evidence relating to Plaintiff's alleged complaints to Commissioner Petrucci. The court granted the motion, and Plaintiff subsequently filed a motion for reconsideration. In the motion, Plaintiff argued that testimony regarding Plaintiff's conversations with Commissioner Petrucci should be admissible because Warden DeRose must have known about Plaintiff's conversations with Commissioner Petrucci because Commissioner Petrucci addressed one of the issues Plaintiff spoke to him about at a prison board meeting that Warden DeRose attended. The court denied Plaintiff's motion.

The court held a pre-trial conference on October 15, 2004. During the conference, defense counsel sought to preclude the admission of a number of

Plaintiff's witnesses and exhibits on the grounds that they were irrelevant or untimely disclosed.  The parties also discussed the relevant time frame of the events at issue.

In an order following the pre-trial conference, the court set the time frame for evidence to be presented at trial as March 2001 to December 2002, but allowed evidence outside of this time frame to be admitted if a proper foundation was established.  Additionally, the court excluded Plaintiff from introducing many of the witnesses and exhibits defense counsel objected to, but deferred ruling on others.  Prior to trial, the court permitted Plaintiff to present some of the contested witnesses if he established a proper foundation (*see* Oct. 25, 2004 Order) and excluded some of the remaining contested exhibits (*see* Nov. 3, 2004 Order).  By the time the trial began, only four exhibits had yet to be ruled on, Exhibits U. through X., which were deposition transcripts of four witnesses.  At the outset of the trial, Plaintiff notified the court that he was withdrawing the exhibits and did not intend to use them.  Later in the trial, however, Plaintiff sought to introduce some of the deposition testimony in order to impeach a witness.  The court denied Plaintiff's request.  Plaintiff requested a hearing on the admissibility of the transcripts, which the court also denied.

On November 8, 2004, a jury trial commenced and lasted six days.  Numerous issues arose during the trial that required discussion at sidebar conferences.  Additionally, Plaintiff's counsel continuously challenged the court's rulings, and occasionally the court admonished Plaintiff's counsel in the presence of the jury.  Finally, at one point during the direct examination of Plaintiff in which Plaintiff had repeatedly provided non-responsive answers, defense counsel objected to a leading question asked by Plaintiff's counsel.  In response, the court remarked that it might be a way to get a straight answer out of him.

At another point in the trial, Plaintiff alleged that an assistant to Warden DeRose who was sitting in on the trial, Brenda Hoffer, was making notes of testimony in the courtroom and later relaying the information to sequestered witnesses. The court interviewed Ms. Hoffer at sidebar about the allegations, and she indicated that although she had spoken to the witnesses, she did not mention anything to them about testimony offered during the proceedings. Plaintiff subsequently filed a motion to re-open his case or to call witnesses on rebuttal in order to provide testimony that Ms. Hoffer was seen talking to sequestered witnesses with her notebook in her hand. The court deferred ruling on the motion. Plaintiff did not pursue the matter during his case-in-rebuttal; thus, the court dismissed his motion as moot. (Doc. 87.)

Finally, during the jury charge conference, Plaintiff raised several objections to the jury instructions. Specifically, Plaintiff argued that the court was improperly imposing Title VII principles to a First Amendment retaliation case. Further, Plaintiff asserted that the court should include alleged retaliatory acts in the charge that it had previously excluded as de minimis because the acts could be considered as part of a continuing course of conduct. The court included some of the language requested, but did not accept Plaintiff's theory regarding a continuing course of conduct.

On November 16, 2004, the jury entered a verdict in favor of Warden DeRose. Plaintiff subsequently filed a timely motion for a new trial. The parties have briefed the issues, and the matter is ripe for disposition.

**II.      Legal Standard: Motion for a New Trial**

A motion for a new trial is governed by Federal Rule of Civil Procedure 59. Under this rule, in the case of a jury trial, "[a] new trial may be granted to all or any of the parties and on all or part of the issues . . . for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Fed. R. Civ. P. 59(a)(1). In the Third Circuit, a new trial is warranted "when the verdict is against the great weight of the evidence or errors at trial produce a result inconsistent with substantial justice." *Sandrow v. United States*, 832 F. Supp. 918, 918 (E.D. Pa. 1993) (citing *Roebuck v. Drexel Univ.*, 852 F.2d 715, 735-36 (3d Cir. 1988)); *see also Bullen v. Chaffinch*, 336 F. Supp. 2d 342, 346 (D. Del. 2004) (noting that excessive damages or improper use of peremptory challenges to exclude potential jurors on the basis of race are other grounds for a new trial).

When a motion for a new trial is based on a prejudicial error of law, the court has broad discretion to order a new trial. *Klein v. Hollings*, 992 F.2d 1285, 1289-90 (3d Cir. 1993). If, however, a motion for a new trial is premised on a verdict that is allegedly against the weight of the evidence, the court's discretion is more limited. *Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1353 (3d Cir. 1991). Under these circumstances, a new trial should only be granted when the verdict "cries out to be overturned or shocks the conscience." *Id*. Nonetheless, in reviewing a motion for a new trial, the court must draw all reasonable inferences in favor of the verdict winner. *Marino v. Ballestas*, 749 F.2d 162, 167 (3d Cir. 1984); *see also* 12 James Wm. Moore et al., Moore's Federal Practice § 59.13[2][a].

**III.     Discussion**

Plaintiff's arguments as to why a new trial should be granted fall into the following three categories: (1) erroneous evidentiary rulings, (2) trial misconduct, and (3) misleading and erroneous jury instructions.  The court will address each category in turn.

### A. Evidentiary Rulings

Plaintiff asserts that the court made the following erroneous evidentiary rulings both before and during the trial.  First, the court erred in precluding documentary evidence and witnesses that were "properly provided to Warden DeRose during the pretrial proceedings." (Pl.'s Br. Supp. New Trial at 11.)  Second, the court erred in excluding evidence regarding Plaintiff's conversations with Commissioner Petrucci.  Third, the court erred in refusing to allow Plaintiff to use certain deposition transcripts at trial.  Fourth, the court erred in limiting the temporal scope of the evidence before trial, but allowing Warden DeRose to introduce a witness who testified to matters that occurred before the designated time period.  The court will address these arguments below.

#### 1. Exhibits and Witnesses Presented at the Pre-Trial Conference

Plaintiff contends that the court improperly "excluded certain witnesses and documents that were identified in the pretrial memorandum" and that were "properly provided to [Warden DeRose] during the pretrial proceedings."  (Pl.'s Br. Supp. New Trial at 11.)  Plaintiff's argument, however, must fail for several reasons.  First, Plaintiff's belief that he can "properly provide[]" *numerous* previously undisclosed exhibits and witnesses during pre-trial proceedings is misguided.  The purpose of the discovery rules in the Federal Rules of Civil Procedure is "to remove surprise from trial preparation."  6 James Wm. Moore et al., Moore's Federal

7

Practice § 26.02. Plaintiff cites to two cases, *Galard v. Johnson*, 504 F.2d 1198 (7th Cir. 1974) and *Dougal v. Williams*, 405 F.2d 867 (3d Cir. 1969), for the apparent proposition that a court may allow "surprise" evidence to be introduced at trial. In both cases, however, the evidence in question was only a single witness or a single exhibit. *Galard*, 504 F.2d at 1203 (noting also that the testimony of the witness in question was known to the opposing party); *Dougal*, 405 F.2d at 868. In contrast, Plaintiff identified many exhibits and witnesses for the first time during pre-trial proceedings. To allow Plaintiff to introduce all the previously undisclosed evidence he sought would have caused significant prejudice to Warden DeRose.

Second, Plaintiff specifically identifies only one exhibit that should have been permitted into evidence, an invoice of a "Lollipops" magazine. Plaintiff does not specify which of the other proposed evidence should have been introduced or, more importantly, how it would have affected the outcome of the trial. Even for the "Lollipops" invoice, Plaintiff fails to explain how its admission would have changed any aspect of the trial. In short, Plaintiff does not describe how the court's decision to preclude evidence that was disclosed for the first time in pre-trial proceedings caused a substantial injustice. *Sandrow v. United States*, 832 F. Supp. 918, 918 (E.D. Pa. 1993) (citing *Roebuck v. Drexel Univ.*, 852 F.2d 715, 735-36 (3d Cir. 1988)).

Finally, Plaintiff does not address the fact that much of the evidence in question was also precluded on relevance grounds. (*See* Oct. 15, 2004 Order ¶¶ 5, 7.) Plaintiff sought to introduce a lot of evidence that related to events that occurred outside the time period established for trial. Additionally, Plaintiff failed to articulate how certain evidence that although potentially relevant to issues dismissed on

summary judgment, was relevant to the limited issue that proceeded to trial. Thus, much of the evidence precluded by the court for failure to timely disclose was also precluded because it was irrelevant.

### 2. **Evidence Relating to Commissioner Petrucci**

In its order ruling on Warden DeRose's motion *in limine*, the court precluded all evidence regarding Plaintiff's alleged complaints to Commissioner Petrucci. (*See* Oct. 14, 2004 Order ¶ 2.) Likewise, the court, in its pre-trial order, prohibited Plaintiff from calling Commissioner Petrucci as a witness because his testimony was irrelevant. (*See* Oct. 15, 2004 Order ¶ 5.) Plaintiff asserts that he or Commissioner Petrucci should have been allowed to testify that they at least spoke together.

In ruling on Defendants' summary judgment motion, the court found that Plaintiff failed to demonstrate a genuine issue that Commissioner Petrucci ever relayed Plaintiff's concerns to Warden DeRose.[2] (Aug. 17, 2004 Mem. at 14 n.6.) Because Warden DeRose was the only alleged retaliator, Plaintiff's complaints to Commissioner Petrucci were irrelevant because there was no connection between the protected speech spoken to Commissioner Petrucci and the retaliatory conduct. If Warden DeRose did not know about Plaintiff's complaints to Commissioner Petrucci, how could he have retaliated against Plaintiff based on those comments? Plaintiff never answered this question; therefore, evidence relating to Commissioner Petrucci was properly precluded as irrelevant.

---

[2] In his brief in support of his motion for a new trial, Plaintiff incorrectly asserts that the court's ruling was based on the fact that Commissioner Petrucci could not recall talking to Plaintiff about his complaints.

Plaintiff made a feeble attempt to show a nexus in a motion for reconsideration of the court's ruling on Warden DeRose's motion *in limine*. In the motion, he argued that Warden DeRose must have known about the conversations because Commissioner Petrucci addressed one of the issues Plaintiff raised to him at a prison board meeting. Plaintiff failed to provide any supporting documentation for this allegation. Further, the allegation is highly speculative in and of itself. Because Plaintiff could not establish the relevance of evidence regarding Commissioner Petrucci, he was not prejudiced by the court's ruling precluding the evidence.

### 3.     Use of Deposition Transcripts at Trial

Plaintiff argues that the court improperly excluded him from using four deposition transcripts, Exhibits U. through X., for impeachment purposes at trial. The court originally deferred ruling on the admissibility of Exhibits U. to X. in its pre-trial order because Warden DeRose raised an issue at the pre-trial conference regarding whether the transcripts had been properly transcribed from a videotape deposition. Before the court made a ruling on the admissibility of the transcripts, however, Plaintiff informed the court that he was withdrawing them and did not intend to use them at trial. Nonetheless, later in the trial, Plaintiff sought to use the transcripts for impeachment purposes, and the court denied his request. Plaintiff asked for a hearing on the matter, but the court also denied this request.

Despite Plaintiff's assertions to the contrary, the court's rulings were not erroneous. Plaintiff had been on notice since the pre-trial conference that questions regarding the appropriateness of the depositions existed. The court deferred ruling on the matter in order to allow Plaintiff to rebut Warden DeRose's arguments, but Plaintiff withdrew his request to introduce the depositions. Then, in the middle of the

trial, Plaintiff suddenly sought to introduce the depositions for impeachment purposes. By that time, however, Plaintiff, having previously withdrawn the depositions as exhibits, had waived his right to use the depositions.

Notwithstanding this waiver, Plaintiff has not shown how his inability to use the depositions caused a substantial injustice in the trial. Plaintiff does not point to testimony he would have liked to introduce and demonstrate how it would have impeached a certain witness. Plaintiff does not indicate how impeachment might have affected the jury's perception of the case. In short, Plaintiff fails to show how he was prejudiced in any way by not being allowed to use the depositions in question at trial.

### 4.    **Temporal Scope**

Plaintiff argues that the court prevented Plaintiff from introducing evidence concerning matters prior to 2001, but erroneously allowed Warden DeRose to call a witness who testified about matters occurring before 2001. Plaintiff's argument is problematic for several reasons. First, Plaintiff does not identify which witness testified about matters prior to 2001 or the nature of the offending testimony or whether he ever objected to the witness's testimony at trial. Second, the court's pre-trial order indicated that evidence occurring before the established time frame could be introduced if a proper foundation was laid. (*See* Oct. 15, 2004 Order ¶ 3.) Finally, Plaintiff fails to provide how the allowance of the allegedly offending testimony caused him prejudice.

The time period established by the court was not, as Plaintiff contends, set arbitrarily. The court established the time frame in an effort to provide some focus to the relevant events that occurred between the parties. Plaintiff worked with

Warden DeRose for a long time, and the court did not want the trial to get bogged down by the irrelevant details of the parties' historically inharmonious work relationship.  The December 2002 ending date was easily established because it reflected the time period in which Plaintiff received his evaluation and recommendation for a 4% pay increase for 2003, which formed the basis of the alleged retaliatory conduct.  The March 2001 beginning date was harder to fix in large part because the parties did a poor job of defining the timing of events in this case. (*See* Aug. 17, 2004 Mem. at 21.)  Thus, the court established a looser time period for the beginning date, setting the time as "*in or around* March 2001." (Oct. 15, 2004 Order ¶ 3 (emphasis added).)  Additionally, as stated above, the court established a way for the parties to lay a foundation for the admission of relevant events that may have occurred earlier.  (*Id.*)

In any event, Plaintiff has failed in his motion for a new trial to provide much of anything for the court to make a finding in his favor on this issue.  Thus, the court rejects Plaintiff's argument that the court erred by allowing Warden DeRose to introduce a witness who testified about events occurring before 2001.

### B. Trial Misconduct

Plaintiff makes two allegations of trial misconduct that he contends prejudiced Plaintiff.  First, Plaintiff asserts that the court displayed prejudice against Plaintiff through its actions towards Plaintiff himself and Plaintiff's counsel.  Second, Plaintiff argues that the court erred by failing to address Plaintiff's claims of possible witness tampering during the trial.  The court will resolve each allegation in turn.

### 1. **<u>Misconduct of the Trial Judge</u>**

Plaintiff asserts that the court's conduct toward himself and his counsel demonstrated a bias that was evident to the jury. Plaintiff contends that the court repeatedly admonished Plaintiff's counsel in front of the jury. Further, Plaintiff alleges that the court made a prejudicial comment to Plaintiff during his direct examination. During Plaintiff's direct examination, Warden DeRose's counsel objected that Plaintiff's counsel had asked a leading question. In response to the objection, the court remarked, "Well, at least we might get a straight answer out of him."

Judicial remarks made during the course of a trial "that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Liteky v. United States*, 510 U.S. 540, 555 (1994). Such remarks will support a claim of bias only "if they reveal . . . a high degree of favoritism or antagonism as to make fair judgment impossible." *Id*. On the other hand, mere expressions of "impatience, dissatisfaction, annoyance, and even anger" do not rise to the level of prejudice. *Id*. at 555-56.

The court's comment in response to defense counsel's objection was nothing more than an expression of annoyance. Plaintiff had repeatedly been non-responsive to his counsel's questions just prior to the objection. Thus, the court's comment was expressed out of an annoyance that Plaintiff was not answering the question asked of him. In other words, the court's conduct was "within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display." *Id*. at 556. Nevertheless, the court overruled defense counsel's objection. Additionally, it was just one comment made over a six-day trial.

Finally, the jury was cautioned in the jury instructions that the comments of the court could not be considered in any way in reaching their verdict. *See* 12 James Wm. Moore et al., Moore's Federal Practice § 59.13[2][c][i][D] (noting that harm caused by misconduct may be cured by appropriate instructions to the jury). Therefore, the court concludes that its conduct toward Plaintiff does not warrant a new trial.

As for the court's conduct towards Plaintiff's counsel, Andrew Ostrowski, the court faced an enormous challenge in this case with courtroom administration. Mr. Ostrowski disagreed with many of the court's pre-trial rulings, and throughout the trial, he took numerous actions that contravened those rulings, usually by attempting to introduce testimony or evidence that had been excluded. Mr. Ostrowski contends that he was merely attempting to "cure" the court's errors. (Pl.'s Br. Supp. New Trial at 9.) A court's rulings, however, are not to be "cured"; they are to be followed – even when counsel disagrees with the decision. Certainly, the court makes wrong decisions, but the appropriate remedy for that situation is a motion for reconsideration or an appeal. Instead, Mr. Ostrowski attempted to run roughshod over many of the court's rulings, which led to a large number of objections and sidebar conferences. At times, Mr. Ostrowski expressed his disapproval of the court's rulings through inappropriate comments made in front of the jury, and the court was forced to admonish him in open court.[3] In short, the

---

[3]Mr. Ostrowski's premeditated intention to challenge the court's rulings during the trial is evident from the language of his brief in support of the instant motion for a new trial. He writes, "In pretrial submissions, Counsel advised the Court and Defendants that he may or would seek reconsideration of many of the perceived erroneous pretrial rulings during the course of the trial." (Pl.'s Br. Supp. New Trial at 9.) To seek reconsideration of a court's ruling based on a good faith belief that the standard for granting such a motion has been met is absolutely acceptable. The reality, however, is that Mr. Ostrowski could not accept the court's pre-trial rulings and simply wanted the court to change course. For instance, Mr. Ostrowski's request to

(continued...)

court faced significant difficulties in maintaining courtroom decorum in this case, and its reasonable efforts in light of the circumstances were not prejudicial to Plaintiff. *See Liteky*, 510 U.S. at 556 ("A judge's ordinary efforts at courtroom administration . . . remain immune.").

### 2. **Witness Tampering**

During the trial, Plaintiff filed a motion to re-open his case or to call witnesses on rebuttal in order to provide testimony that Warden DeRose's assistant, Brenda Hoffer, had taken notes of testimony in the courtroom and gave the information to sequestered witnesses. Plaintiff did not pursue the matter during his case-in-rebuttal so the court dismissed his motion as moot. Plaintiff now contends that the matters raised in his motion to re-open justify a new trial.

Plaintiff had the opportunity to address this issue at trial; however, he did not seek to introduce any witnesses to testify as to these matters in his case-in-rebuttal. Thus, the matter was moot. The court will not order a new trial based on an issue that Plaintiff never pursued at trial. Regardless, the court interviewed Ms. Hoffer at a sidebar conference regarding the allegations, and she stated that she had

---

³(...continued)
introduce evidence regarding Plaintiff's conversation with Commissioner Petrucci was denied after the pre-trial conference. The court found that the evidence was irrelevant based on the court's summary judgment ruling that Plaintiff failed to demonstrate a genuine issue that Commissioner Petrucci had relayed Plaintiff's complaints to Warden DeRose. At the pre-trial conference, Mr. Ostrowski did not offer a credible argument as to why the evidence would otherwise be relevant so the court denied Mr. Ostrowski's request. Mr. Ostrowski raised the issue again on a motion for reconsideration of the court's ruling on Warden DeRose's motion *in limine*, and because Mr. Ostrowski again did not present a convincing argument, the court denied the motion. Even after the court twice denied the admissibility of the evidence relating to Commissioner Petrucci, Mr. Ostrowski raised the issue multiple times when questioning witnesses at trial. Mr. Ostrowski's conduct, therefore, put the court in a position to repeatedly deny the same request. This same pattern occurred with many of the court's other pre-trial rulings, which resulted in numerous objections and sidebar conferences. Now, on a motion for a new trial, Mr. Ostrowski seeks to characterize the court's actions as prejudicial to Plaintiff. The court's actions, however, were only the result of Mr. Ostrowski's own conduct.

not provided information to sequestered witnesses during the trial. Therefore, the court concludes that a new trial on the issue is not warranted.

### C.     Jury Instructions

Plaintiff argues that the court's jury instructions were erroneous and misleading in two ways. First, the court improperly imposed Title VII principles on a First Amendment retaliation case. Second, the court should have allowed an instruction on whether alleged retaliatory acts that were dismissed on summary judgment as de minimis amounted to a continuing course of conduct. The court will address these arguments in turn.

#### 1.     First Amendment Legal Principles

Plaintiff asserts that the court erred by "superimposing Title VII principles over Plaintiff's 1983/First Amendment claims, which provides an inapt legal context for such matters." (Pl.'s Br. Supp. New Trial at 7.) Plaintiff seems to indicate that the court failed to include legal principles from two Third Circuit cases dealing with First Amendment retaliation: *Suppan v. Dadonna*, 203 F.3d 228 (3d Cir. 2000) and *Anderson v. Davila*, 125 F.3d 148 (3d Cir. 1997). In Plaintiff's Supplemental Proposed Jury Instructions (Doc. 79), he cited to *Suppan* for the proposition that retaliatory conduct must be "sufficient to deter a person of ordinary firmness from exercising his First Amendment rights." *Suppan*, 203 F.3d at 235 (internal quotation omitted). In the same filing, Plaintiff cited to *Anderson* for the proposition that the jury need not find that the actions taken by Warden DeRose were unlawful because even legitimate and constitutional actions can be retaliatory. *Anderson*, 125 F.3d at 161.

As an initial matter, the court notes that it included the language from *Suppan* in the jury charge. Indeed, the court included the language as *the* definition of retaliation. Although the court did not include the requested language from *Anderson*, it cannot be said that in doing so, the court omitted a key First Amendment retaliation principle. In fact, the court did not include the language because the principle seemed evident in and of itself.

Nonetheless, Plaintiff does not cite to specific language in the jury instruction that improperly reflects Title VII principles. At various times throughout the trial, Plaintiff objected to the court's use of the phrase "adverse employment action," but this phrase does not occur anywhere in the jury charge. Thus, the court cannot even discern which Title VII principle was allegedly wrongfully included in the jury instructions.

Regardless, there is, in fact, a good deal of overlap between First Amendment retaliation and Title VII law. In a recent case, the Third Circuit described the first two First Amendment retaliation elements as follows: "Under 42 U.S.C. § 1983, to claim retaliation for the exercise of First Amendment rights, the plaintiff must prove: (1) he or she engaged in a protected employee activity; (2) the employer took an *adverse employment action* after or contemporaneous with the protected activity . . . ." *Sloan v. City of Pittsburgh*, 110 Fed. Appx. 207, 211 (3d Cir. 2004) (emphasis added) (citing *Weston v. Pennsylvania*, 251 F.3d 420, 430 (3d Cir. 2001), which is a Title VII case). Additionally, the Third Circuit has noted that cases involving retaliation under the Title VII context may be instructive to a § 1983 retaliation analysis. *See Brennan v. Norton*, 350 F.3d 399, 420 (3d Cir. 2003) (analogizing cases dealing with the causation element in Title VII retaliation cases to §

17

1983 claims). Therefore, the court's jury instructions were not "tainted" by Title VII principles, and Plaintiff will not be granted a new trial for this reason.

### 2. **Continuing Course of Conduct**

Finally, Plaintiff argues that the court erred by not allowing Plaintiff to proceed on a legal theory that even though some of the alleged retaliatory acts taken against him were de minimis, he was subjected to a continuing course of conduct. In a recent case, the Third Circuit held that alleged retaliatory actions must rise to a certain level in order to be actionable. *Brennan*, 350 F.3d at 419. Acts such as criticism, false accusations, or verbal reprimands were deemed de minimis. *Id*. However, the Third Circuit also noted that "a plaintiff may be able to establish liability under § 1983 based upon a continuing course of conduct even though some or all of the conduct complained of would be *de minimis* by itself or if viewed in isolation." *Id*. at 419 n.16.

In its ruling on Defendants' summary judgment motion, the court found that Plaintiff's allegations that Warden DeRose threatened him in a "screaming tirade," reduced Plaintiff's staff and deprived him of resources to perform his job, and frequently called him into work unnecessarily were de minimis. Plaintiff contends that these alleged retaliatory acts should have been presented to the jury under the theory that they were part of a continuing course of conduct. The court disagrees.

First, Plaintiff did not raise his "continuing course of conduct" theory with the court until late in the trial. Nothing in the Complaint or in Plaintiff's arguments on summary judgment could be construed as reliance on this theory. Second, the Third Circuit's holding in *Brennan* contemplated that a "continuing course of conduct" would involve much more significant activity. In *Brennan*, the

Third Circuit found that many of the plaintiff's allegations of retaliation were de minimis, but even given the litany of alleged acts in that case, the court did not conclude that a continuing course of conduct existed.  *Id*. at 418-19.  Indeed, if only a couple of de minimis acts could qualify as a continuing course of conduct, the exception would swallow the rule.  In short, the court's failure to provide an instruction on a "continuing course of conduct" did not deprive Plaintiff of a fair trial.

**IV.**     **Conclusion**

In accordance with the foregoing discussion, the court will deny Plaintiff's motion for a new trial.  An appropriate order will issue.

s/Sylvia H. Rambo
SYLVIA H. RAMBO
United States District Judge

Dated:  May 20, 2005.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**JAMES DEWEES,**

      **Plaintiff**

   **v.**

**WARDEN DOMINICK DEROSE
and DAUPHIN COUNTY,**

      **Defendants**

**CIVIL NO. 1:CV-03-490**

## O R D E R

In accordance with the accompanying memorandum of law, **IT IS HEREBY ORDERED THAT**:

   1) Plaintiff's motion for a new trial (Doc. 94) is **DENIED**.

   2) The Clerk of Court is directed to close the case.

                                s/Sylvia H. Rambo
                                SYLVIA H. RAMBO
                                United States District Judge

Dated:  May 20, 2005.